IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES LEWIS,

    Plaintiff,

vs.                                            Case No.

UNITED STATES OF AMERICA,

    Defendant.

_____

## COMPLAINT

1. Plaintiff, Charles Lewis, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et. seq., sues the Defendant for damages and alleges:

## JURISDICTION, VENUE AND PARTIES

2. At all times material hereto, Plaintiff, Charles Lewis, was a resident of Okaloosa County, Florida.

3. The Defendant, United States of America, is the proper party under the Federal Tort Claims Act for allegations of tortious acts and negligence against its employees and agents including those of the United States Coast Guard ("Coast Guard"), a federal agency within the Department of Homeland Security.

4. Defendant, by and through its several departments and, at all times material hereto, employed, retained or was otherwise legally responsible for the acts and omissions of its employees and agents in the Coast Guard and working for the

1

Coast Guard. The negligent acts of Defendant's employees and agents were committed while acting within the course and scope their employment or agency with the Defendant.

5. Jurisdiction in this matter arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, providing that a tort claim against the United States of America, which is administratively denied, may be presented to a Federal District Court for judicial consideration.

6. Venue is proper in this District as the Plaintiff resides in Okaloosa County, Florida, Defendant does business in this District and the substantial part of the acts and omissions that give rise to Plaintiff's claims occurred in this District.

7. Pursuant to the Federal Tort Claim Act, on or about January 17, 2025, Plaintiff timely presented his claim to the appropriate federal agency for administrative settlement using Standard Form 95. The claim sought $350,000.00 in damages for personal injuries and $9,734.20 in damages for property damage.

8. On April 1, 2025, or later, the Coast Guard Claims Division mailed a denial letter of Plaintiff's claim. This lawsuit was then timely filed.

9. Plaintiff now brings this action pursuant to the Federal Tort Claim Act for damages.

## FACTUAL ALLEGATIONS

10. Plaintiff incorporates paragraphs 1 through 9 as if fully set forth herein.

11. At all times material hereto, Plaintiff was living on his approximately 37-foot Silverton boat, which was anchored in Destin Harbor located in Destin, Florida between East Pass Marina and Heron Harbor.

12. Plaintiff also owned an inflatable dinghy with an attached Mercury outboard motor that was secured to the back of his boat. Plaintiff sometimes used the dinghy to travel the short distance between his boat and a dock so Plaintiff could work and run personal errands.

13. At the time of the subject incident, Plaintiff was in full compliance with all applicable Florida boating laws and federal regulations.

14. Destin Harbor is a popular area located in the city of Destin, Florida and is lined with restaurants, shops and bars. Destin Harbor is also home to numerous activities including charter fishing, boating, snorkeling, kayaking, parasailing, and jet skiing.

15. On or about February 11, 2023, a kayaker went missing in the Destin Harbor. A search and rescue mission was launched that included first responders and the assistance of a Coast Guard helicopter.

16. On or about February 11, 2023, after arriving on scene, the Coast Guard helicopter, the pilot and the crew began hovering prohibitively and dangerously low over Plaintiff's boat. Upon information and belief, the Coast Guard helicopter

negligently used Plaintiff's boat as an adjustment target for the helicopter's flood light during the search for the missing kayaker.

17. Plaintiff, who was asleep on his boat at the time, was awakened by the Coast Guard helicopter's flood light, the sound of the hovering helicopter and because Plaintiff's boat was shaking violently. Plaintiff immediately went outside to the back of his boat to investigate what was happening.

18. As Plaintiff was standing outside on the back of his boat, the Coast Guard helicopter began to maneuver away from Plaintiff's boat. The manner in which the Coast Guard helicopter hovered and maneuvered above and near Plaintiff's boat created significant rotor wash and wake turbulence that tore Plaintiff's dinghy and dinghy motor from the back of Plaintiff's boat and causing them to strike Plaintiff in the head, knocking him to the ground and knocking him unconscious.

19. As soon as Plaintiff was physically able to do so, he reported the incident to the Coast Guard. Approximately two days later, the pilot of the Coast Guard helicopter contacted Plaintiff and apologized for the incident. The pilot of the Coast Guard helicopter explained to Plaintiff what had happened and that the pilot and crew mistakenly thought that no one was aboard Plaintiff's boat.

20. At no point prior to the subject incident was there any indication that the missing kayaker was near Plaintiff's boat nor was there any basis for the Coast

Guard helicopter to operate as it did above and near Plaintiff's boat in the manner in which it did.

21. The negligence of Defendant in using Plaintiff's boat as an adjustment target for the helicopter's flood light, the operation of the helicopter, its maneuvers and flight path was not done in a safe and reasonable manner and violated applicable rules and regulations including, but not limited to, the U.S. Coast Guard's Air Operations Manual (COMDTINST M3710.1), the Federal Aviation Regulations such as the Code of Federal Regulations Title 14, the Aeronautical Information Publication Gen 3, and Florida law.

22. The Coast Guard helicopter crew never attempted to communicate with Plaintiff including by way of loudspeaker or by radio to identify who they were or what they were doing.

23. The Coast Guard helicopter crew never provided any warning to Plaintiff about what they were doing or any warning to Plaintiff to stay inside his boat. Moreover, they never asked Plaintiff to move his boat or leave his boat while they searched for the missing kayaker.

24. At the time of the subject incident, the Defendant knew or should have known that Plaintiff was aboard his boat where he lived.

25. At all times material hereto, the Coast Guard helicopter was under the exclusive control of the Defendant.

26. At all times material hereto, Defendant's members, employees and agents were acting within the course and scope of their employment or agency with Defendant.

27. As the result of Defendant's negligence, Plaintiff sustained serious bodily injuries and property damage.

## LIABILITY AND CAUSES OF ACTION

### COUNT I – NEGLIGENT FAILURE TO WARN PLAINTIFF

28. Plaintiff incorporates paragraphs 1 through 27 as if fully set forth herein.

29. At all times material hereto, members, employees and agents of the Defendant were responsible for the operation and flight of the Coast Guard helicopter.

30. At all times material hereto, members, employees and agents of the Defendant knew of the large public presence in Destin Harbor.

31. At the time of the subject incident, Defendant knew or should have known that Plaintiff was on his boat where he lived.

32. At all times material hereto, there was no indication that the missing kayaker was anywhere near Plaintiff's boat.

33. At all times material hereto, Defendant owed a duty to warn Plaintiff of helicopter operations, search and rescue missions, and associated dangers it knew or

should have known would directly impact Plaintiff's personal safety and his boat where he lived.

34. Defendant breached these duties of care by failing to warn Plaintiff, failing to communicate with Plaintiff to warn him regarding what Defendant was doing, failing to even attempt to communicate with Plaintiff to warn him regarding what Defendant was doing, failing to warn Plaintiff to stay inside his boat, failing to warn Plaintiff to leave his boat, and failing to warn Plaintiff to clear his boat from the area while Defendant searched for the missing kayaker.

35. Defendant knew or should have known about these failures to warn and their impact on public safety including the Plaintiff.

36. Additionally, Defendant's employees and agents had a non-delegable duty to warn Plaintiff of what Defendant was doing as described above as they were unknown to Plaintiff and could not be discovered by Plaintiff through the exercise of due care.

37. Defendant's breaches of its duties of care were the direct and proximate cause of physical injuries and damage to Plaintiff and his property.

38. As a result of Defendant's negligence, Plaintiff sustained emotional and physical damages, both past and future, serious and permanent injuries, pain and suffering, both past and future, loss of enjoyment of life, both past and future, loss wages, both past and future, medical expenses, both past and future, and property

damage. These breaches of the duties of care were the direct and proximate cause of injuries sustained by Plaintiff entitling him to damages.

### COUNT II – NEGLIGENT OPERATION AND FLIGHT OF THE COAST GUARD HELICOPTER

39. Plaintiff incorporates paragraphs 1 through 38 as if fully set forth herein.

40. At all times material hereto, Defendant owed Plaintiff a duty of care to operate and fly the Coast Guard helicopter and conduct search and rescue missions in a safe and reasonable manner and in compliance with applicable rules and regulations including, but not limited to, the U.S. Coast Guard's Air Operations Manual (COMDTINST M3710.1), the Federal Aviation Regulations such as the Code of Federal Regulations Title 14, the Aeronautical Information Publication Gen 3, and Florida law.

41. Defendant negligently breached these duties of care by choosing to use Plaintiff's boat as an adjustment target for the helicopter's flood light, hovering prohibitively and dangerously low over Plaintiff's boat and failing to warn Plaintiff of what Defendant was doing.

42. Defendant further breached these duties of care by negligently hovering and maneuvering the helicopter above and near Plaintiff's boat in a manner that created significant rotor force and wake turbulence that dislodged Plaintiff's dinghy

8

and attached outboard motor from the back of Plaintiff's boat and causing them to strike Plaintiff.

43. Defendant's breaches of its duties of care were the direct and proximate cause of physical injuries and damage to Plaintiff and his property.

44. As a result of Defendant's negligence, Plaintiff sustained emotional and physical damages, both past and future, serious and permanent injuries, pain and suffering, both past and future, loss of enjoyment of life, both past and future, loss wages, both past and future, medical expenses, both past and future, and property damage. These breaches of the duties of care were the direct and proximate cause of injuries sustained by Plaintiff entitling him to damages.

## COUNT III – NEGLIGENT TRAINING AND SUPERVISION OF DEFENDANT'S MEMBERS, EMPLOYEES AND AGENTS

45. Plaintiff incorporates paragraphs 1 through 44 as if fully set forth herein.

46. At all times material hereto, Defendant owed a duty to the public including Plaintiff to train and supervise its members, employees and agents to operate and fly the Coast Guard helicopter and conduct search and rescue missions in a safe and reasonable manner and in compliance with applicable rules and regulations including, but not limited to, the U.S. Coast Guard's Air Operations Manual (COMDTINST M3710.1), the Federal Aviation Regulations such as the

Code of Federal Regulations Title 14, the Aeronautical Information Publication Gen 3, and Florida law.

47. Defendant breached these duties of care and Defendant's negligence resulted in Defendant's employees and agents choosing to use Plaintiff's boat as an adjustment target for the helicopter's flood light, hovering prohibitively and dangerously low over Plaintiff's boat and failing to warn Plaintiff of what Defendant was doing.

48. Defendant's negligence further resulted in its employees and agents hovering and maneuvering the helicopter above and near Plaintiff's boat in a manner that created significant rotor force and wake turbulence that dislodged Plaintiff's dinghy and attached outboard motor from the back of Plaintiff's boat and causing them to strike Plaintiff.

49. Defendant's breaches of its duties of care were the direct and proximate cause of physical injuries and damage to Plaintiff and his property.

50. As a result of Defendant's negligence, Plaintiff sustained emotional and physical damages, both past and future, serious and permanent injuries, pain and suffering, both past and future, loss of enjoyment of life, both past and future, loss wages, both past and future, medical expenses, both past and future, and property damage. These breaches of the duties of care were the direct and proximate cause of injuries sustained by Plaintiff entitling him to damages.

## COUNT IV – NEGLIGENCE (Res Ipsa Loquiitur)

51.   Plaintiff incorporates paragraphs 1 through 50 as if fully set forth herein.

52.   The Coast Guard helicopter was under the exclusive control of Defendant.

53.   The subject incident would not, in the ordinary course of events, have occurred without negligence on the part of Defendant.

54.   Plaintiff was not contributorily negligent, and he did not engage in any action that caused his injuries.

55.   The subject incident that caused Plaintiff's injuries would not have occurred had Defendant exercised due care.

56.   As a result of Defendant's negligence, Plaintiff sustained emotional and physical damages, both past and future, serious and permanent injuries, pain and suffering, both past and future, loss of enjoyment of life, both past and future, loss wages, both past and future, medical expenses, both past and future, and property damage. These breaches of the duties of care were the direct and proximate cause of injuries sustained by Plaintiff entitling him to damages.

WHEREFORE Plaintiff, Charles Lewis, demands judgment against the Defendant, United States of America, in an amount not to exceed that which was contained in the Administrative Claim, the costs of this litigation to the extent

permitted by law, and other and further relief as the Court deems just and proper and further demands a trial by jury.

 Respectfully submitted on this the 30th day of September 2025.

            */s/ Chad D. Camper*
            _____
            Chad D. Camper
            FL Bar No.:  048944
            DEAN & CAMPER, P.A.
            1982 Lewis Turner Blvd., Suite A
            Fort Walton Beach, FL 32548
            Telephone: (850) 796-3077
            Facsimile: (850) 796-0323
            Attorneys for Plaintiffs
            Primary Designated Email Address:
            chad@deancamper.com
            Secondary Designated Email Address:
            amber@deancamper.com