UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES LEWIS,

    Plaintiff,

v.                                                                    Case No. 3:25-cv-1818-MCR-HTC

UNITED STATES OF AMERICA,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Charles Lewis has filed a complaint against the United States of America (the "Government") under the Federal Tort Claims Act ("FTCA"), alleging he was injured when a Coast Guard helicopter performing a search and rescue mission caused a dinghy secured to his boat to detach and strike him in the head. Doc. 2. The Government has moved to dismiss Lewis's claims as being time-barred under the Suits in Admiralty Act ("SAA") and, alternatively, for lack of jurisdiction because the claims are barred by sovereign immunity. Doc. 13. Upon careful consideration of the motion, Lewis's response (Doc. 14), the Government's reply (Doc. 22), and the relevant law, the undersigned agrees and finds the Government's motion should be GRANTED and this action should be DISMISSED WITH PREJUDICE.

## I.    Background[1]

On February 11, 2023, a kayaker went missing in Destin Harbor.  First responders launched a search and rescue mission that was assisted by a Coast Guard helicopter.  Meanwhile, Lewis was sleeping on his 37-foot boat, which was anchored in Destin Harbor.

During the search and rescue mission, the Coast Guard helicopter began hovering "dangerously low" over Lewis's boat, as the helicopter was using the boat "as an adjustment target for the helicopter's flood light during the search for the missing kayaker."  The helicopter caused the boat to shake violently, which, when combined with the sound and floodlight from the helicopter, woke Lewis.  Lewis went outside to the back of his boat to investigate.  As Lewis stood on the back of the boat, the helicopter began to maneuver away from the boat, creating rotor wash and wake turbulence.  The helicopter's maneuver caused a dinghy secured to the back of the boat to detach and strike him in the head, injuring him and knocking him unconscious.

As soon as he was physically able to do so, Lewis reported the incident to the Coast Guard.  Two days later, the helicopter pilot contacted Lewis and apologized. The pilot explained what happened and told Lewis the helicopter crew mistakenly thought no one was aboard the boat.

---

[1] The factual allegations recited herein are taken from Lewis's complaint.  Doc. 2.

Based on the foregoing, Lewis alleges the Government: (1) negligently failed to warn him about the search and rescue mission and its associated dangers; (2) negligently operated the helicopter during the search and rescue mission; and (3) negligently trained and supervised the helicopter crew.[2]

## II.    Legal Standard

The Government moves for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing the claims are time-barred.  Alternatively, the Government moves for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction, contending the claims are barred by sovereign immunity.

For purposes of Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, conclusory allegations and legal conclusions couched as factual allegations are not

---

[2] The complaint contains a fourth claim, titled "Negligence (Res Ipsa Loquitur)."  However, "res ipsa loquitor is not a cause of action but instead a way to prove negligence."  *Mucciolo v. Boca Raton Reg'l Hosp., Inc.*, 824 F. App'x 639, 644 n.2 (11th Cir. 2020).  Thus, the Court need not separately analyze whether Count IV is covered by the discretionary function exception or is untimely.

entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In ruling on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, courts may consider matters outside the pleadings without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Motions under Rule 12(b)(1) can be categorized as either "facial attacks" or "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). A facial attack is an assertion that the complaint fails to allege a basis for subject-matter jurisdiction, which the court resolves by looking to the complaint alone. *Id.* at 1261. A factual attack disputes "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "If the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action, then ... 'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529).

## III.   Discussion

The undersigned agrees with the Government that this action does not fall under the FTCA but is an admiralty action, which can only be brought under the SAA. Although the Government's primary basis for dismissal is that Lewis's claims are time-barred, because sovereign immunity is jurisdictional, that argument will be

addressed first. *See Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1167 (11th Cir. 2020) ("Because the discretionary-function exception applies here, the United States has not unequivocally waived its sovereign immunity, and the district court therefore lacked jurisdiction[.]").

For the reasons discussed below, the Court lacks jurisdiction over Lewis's negligent failure to warn and negligent training and supervision claims because they fall within the discretionary function exception to the SAA's waiver of sovereign immunity. Lewis's negligent operation claim, however, does not fall within the discretionary function exception. That claim, nonetheless, is also subject to dismissal because it (as well as the other two claims) is barred by the SAA's two-year statute of limitations.

**A.     The SAA, not the FTCA, controls Lewis's claims.**

Lewis brings this action pursuant to the FTCA, but the Government argues Lewis's claims can only be brought pursuant to the SAA because they are admiralty claims. As the Government points out, this is an important distinction, because if the claims are admiralty claims, which arise only under the SAA, then they are subject to a different filing deadline than if they arise under the FTCA.

"Through the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). However, the FTCA's

waiver of sovereign immunity excludes any admiralty claim for which a remedy is provided by the Public Vessels Act[3] or the SAA. *Anderson v. United States*, 317 F.3d 1235, 1237 (11th Cir. 2003) (citing 28 U.S.C. § 2680(d)).  And "if admiralty jurisdiction exists for [a plaintiff's] claim, it cannot be brought under the FTCA." *Id.*

Under the SAA, "a civil action in admiralty in personam may be brought against the United States" "[i]n a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained[.]"  46 U.S.C. § 30903(a).  To determine whether a claim falls within a federal court's admiralty jurisdiction, courts apply a "location" test and "connection" test, and both must be satisfied. *Anderson*, 317 F.3d at 1237.  Under the location test, "the incident or injury must 'occur on navigable water.'"  *Maglana v. Celebrity Cruises Inc.*, 136 F.4th 1032, 1037 (11th Cir. 2025) (alteration and citation omitted).

The location test is easily met here because Lewis's claims arise from injuries he received on February 11, 2023, while on a boat located in Destin Harbor. *See Harville v. Johns-Manville Prods. Corp.*, 731 F.2d 775, 782 (11th Cir. 1984) ("Under the locality test, the tort occurs 'where the alleged negligence took effect,' rather

---

[3] The Public Vessels Act applies to "[c]laims seeking relief for damages caused directly by a public vessel, or by the negligent operation thereof[.]"  *Uralde v. United States*, 614 F.3d 1282, 1286 (11th Cir. 2010).  Thus, Lewis's claims do not implicate the Public Vessels Act.

than where the negligent act was done.") (citation omitted); *Sperry Rand Corp. v. Radio Corp. of Am.*, 618 F.2d 319, 321 (5th Cir. 1980) ("[S]o long as the place of the injury … occurs upon navigable waters, the fact that the negligent act may have occurred on shore is of no relevance.").  Destin Harbor is a navigable waterway that connects to the Gulf of Mexico and is "home to numerous activities including charter fishing [and] boating."  Doc. 2 at 3; *see also Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1377 (5th Cir. 1988) ("[N]avigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce"); *In re Backcountry Outfitters, Inc.*, 2008 WL 516792 (N.D. Fla. Feb. 22, 2008) (concluding court had admiralty jurisdiction over claims when boat departed from Destin Harbor and had accident just outside the harbor near Coast Guard station).

Under the connection test, the incident must have: (1) a potentially disruptive impact on maritime commerce considering the general features of the type of incident involved; and (2) a substantial relationship to traditional maritime activity considering the general character of the activity giving rise to the incident.  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).  The connection test is also satisfied.

For the first part of the connection test, courts must consider "the incident at an intermediate level of possible generality" and ask, "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial

shipping." *Grubart*, 513 U.S. at 538-39 (noting courts consider potential effects, not the particular facts of the incident).  The type of incident at issue here—a search and rescue mission which damages a boat on navigable water and causes injury to a bystander on that boat—has a potentially disruptive impact on maritime commerce. *See Taghadomi v. United States*, 401 F.3d 1080, 1086 (9th Cir. 2005) (holding claim that kayaker thrown overboard died as a result of negligent search and rescue mission satisfied connection test because "[t]he efficacy of search-and-rescue operations has a direct effect on the health and lives of seamen" and "insofar as the rescuer can preserve the vessel, it prevents economic loss to the vessel's owner"); *Johnson v. United States*, 2025 WL 4055404, at *3 (S.D. Ga. Mar. 27, 2025) ("[A]n injury that occurs on a boat in a navigable waterway certainly has the potential to disrupt maritime commerce"); *Donnelly v. Slingshot Sports LLC*, 605 F. Supp. 2d 613, 617 (D. Del. 2009) ("[R]escue efforts and after-accident investigations can lead to disruption of maritime commerce").

Lewis's claims also meet the second part of the connection test because search and rescue missions have a substantial relationship to traditional maritime activity. *See Taghadomi*, 401 F.3d at 1087 (concluding Coast Guard's search and rescue operation "assuredly" shows a substantial relationship to traditional maritime activity"); *Kelly v. United States*, 531 F.2d 1144, 1147 (2d Cir. 1976) ("[R]escue operations of the Coast Guard conducted on navigable waters do in fact bear a

significant relationship to traditional maritime activities for purposes of admiralty jurisdiction."). Furthermore, while search and rescue missions for individuals lost at sea may have traditionally been conducted by vessels, the use of a helicopter to perform the same task does not affect whether a substantial relationship to maritime activity exists. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 219 (1986) ("Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an 'island,' albeit an artificial one, to the shore."). Thus, both parts of the connection test are met.

Lewis's response suggests the negligent failure to warn, training, and supervision claims involve activities distinct from those relating to the negligent operation claim and do not have a substantial relationship to traditional maritime activity. *See* Doc. 14 at 3. He is incorrect. "[A]s long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong." *Grubart*, 513 U.S. at 541.

Lewis also asserts the helicopter's use of his boat as an adjustment target either preceded the search and rescue operation or was outside the scope of it. Doc. 14 at 4. However, that assertion is inconsistent with the complaint, which alleges

the "helicopter negligently used Plaintiff's boat as an adjustment target for the helicopter's flood light *during the search for the missing kayaker*."  Doc. 2 at 3-4 (emphasis added).  Furthermore, the connection test is satisfied even if the Coast Guard helicopter was merely patrolling navigable water rather than actively engaging in a search and rescue mission.  *See Lantigua-Núñez v. U.S. Coast Guard*, 174 F.4th 293, 298 (1st Cir. 2026) (concluding incident where man on vessel was shot by Coast Guard from helicopter satisfied location and connection tests and noting the Coast Guard's "actions bear 'a significant relationship' to its 'traditional maritime activity' of patrolling and enforcing the law on the waters"); *Kelly*, 531 F.2d at 1148 (noting "[i]t would be impossible to find an agency of our government with a closer relationship to maritime activity" than the Coast Guard).

Finally, Lewis suggests the FTCA controls his claims because the search "necessarily include[d] land immediately adjacent to Destin Harbor."  Doc. 14 at 4. However, the fact that the search may have extended to nearby land is irrelevant. Lewis was injured on the water, and thus his torts are deemed to have occurred there. Indeed, the Supreme Court "has taken an expansive view of admiralty jurisdiction and stated that in modern maritime commerce 'the shore is now an artificial place to draw a line.'"  *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004) (concluding court had admiralty jurisdiction when cruise ship passenger alleged she had been sexually assaulted while in a port-of-call).

Because Lewis's claims meet the location and connection tests, they are based in admiralty, subject to the SAA, and cannot be brought under the FTCA. *See Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006) (explaining that the SAA "provides a waiver of sovereign immunity and the sole jurisdictional basis for admiralty claims against the United States that do not involve public vessels.") (cleaned up); *see also Uralde*, 614 F.3d at 1286 ("[W]hen Coast Guard personnel are negligent in performing functions other than those 'in the operation of' public vessels, the claims arising from those acts fall under the SAA").

**B.    Under the discretionary function exception to the SAA's waiver of sovereign immunity, this Court lacks jurisdiction over Lewis's claims for negligent failure to warn and negligent training and supervision.**

Although the SAA waives the Government's sovereign immunity for maritime tort claims, the waiver is subject to the discretionary function exception, which preserves sovereign immunity for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Mid-South Holding Co., Inc. v. United States*, 225 F.3d 1201, 1204-05 (11th Cir. 2000). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig*

*Airlines)*, 467 U.S. 797, 808 (1984).  The discretionary function exception "must be strictly construed in favor of the Government, and if it applies, federal courts lack subject-matter jurisdiction over the claims."  *Swafford v. United States*, 839 F.3d 1365, 1369-70 (11th Cir. 2016).

To determine whether the discretionary function exception applies, a court must identify the conduct at issue and apply a two-step test.  *Id.* at 1370.  At the first step, a court considers whether the conduct involves an element of judgment or choice, which will be the case unless a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard.  *Cranford*, 466 F.3d at 958.

At the second step, a court "ask[s] whether the judgment or choice is grounded in considerations of public policy, because the 'purpose of the discretionary function exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  *Cranford*, 466 F.3d at 958 (cleaned up) (quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)).  The "inquiry does not focus either on the subjective intent of the government agent or on whether the agent actually weighed policy considerations, but 'on the nature of the actions taken and on whether they are susceptible to policy analysis.'"  *Id.* (citations omitted).

Applying the two-step test to the allegations here, the undersigned concludes Lewis's negligent failure to warn claim (Count I) and negligent training and supervision claim (Count III) fall within the discretionary function exception. Thus, they should be dismissed for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

Decisions regarding what warnings should be given before and during Coast Guard search and rescue operations involve balancing policy considerations. For example, the Government would need to decide which personnel should be tasked with providing warnings to bystanders, what media should be used to communicate those warnings, and how frequently or early those warnings should be given. Those decisions would also need to be weighed against concerns that providing warnings could delay or interfere with potentially time-sensitive rescue efforts. Thus, the Coast Guard's failure to warn Lewis also falls within the discretionary function exception. *See Monzon v. United States*, 253 F.3d 567, 573 (11th Cir. 2001) (holding the failure to warn individual visitors of rip currents near a beach area fell within the discretionary function exception).

Similarly, decisions regarding how to train and supervise crew members during a search and rescue operation also involve policy considerations, including those involving manpower and resource allocation. *See Andrews v. United States*, 121 F.3d 1430, 1441 (11th Cir. 1997) ("[D]ecisions regarding the exercise of

supervisory authority are of the sort the discretionary function exception was designed to encompass."); *Parker v. United States*, 500 F. App'x 630, 632 (9th Cir. 2012) ("[N]egligent supervision claims 'fall squarely within the discretionary function exception'") (citation omitted); *Echevarria-de-Pena v. United States*, 2013 WL 616932, at *4 (S.D. Fla. Feb. 19, 2013) (explaining a negligent training claim fell "within the ambit of the discretionary function exception" because "[t]here is no doubt that BOP exercises discretion in how it trains its employees" and the "decision is also grounded in considerations of public policy because decisions as to how to train employees necessarily involve the allocation of BOP's economic resources").

Moreover, Lewis does not identify a federal statute, regulation, or policy which mandates what warnings, training, or supervision must be provided in connection with Coast Guard helicopter operations, nor does he allege that any Government employee failed to comply with those statutes, regulations, or policies. *See Shivers v. United States*, 1 F.4th 924, 931 (11th Cir. 2021) ("Only when a federal employee acts contrary to a <u>specific prescription</u> in federal law—be it a statute, regulation, or policy—does the discretionary function exception not apply.") (emphasis in original); *see also id.* (affirming dismissal of claim under discretionary function exception when plaintiff pointed "to no federal statute, regulation, or policy that specifically prescribes a course of action that the prison employees here failed to follow"). In contrast, the Government cites several federal statutes and guidance

which indicate the Coast Guard has discretion when it comes to deciding whether to engage in search and rescue operations and how to carry out those operations. *See In re Moore*, 488 F. Supp. 3d 231, 237 (D. Md. Sept. 21, 2020) ("Congress leaves to USCG personnel the exact means and methods of conducting search and rescue missions in which they choose to engage."); *see also* 14 U.S.C. § 521.

Whether Lewis's negligent operation claim (Count II) falls under the discretionary function exception, however, is a harder call. While the Coast Guard's general decisions about what assets to deploy or what tasks to undertake during a search and rescue mission are considered discretionary functions, *see In re Moore*, 488 F. Supp. 3d at 237-40, Lewis's negligent operation claim is based, at least in part, on the allegation that the Coast Guard helicopter hovered too low over his boat. The undersigned cannot say at this stage that deciding what distance to maintain between the helicopter and Lewis's boat is the type of decision that would involve policy considerations.[4]  Instead, that conduct is similar to the negligent operation of a motor vehicle, which the Supreme Court has indicated is not covered by the discretionary function exception. *See Gaubert*, 499 U.S. at 325 n.7 ("If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not

---

[4] Nothing before the Court indicates the efficacy of the search and rescue operation was dependent upon the altitude at which the helicopter hovered over Lewis's boat.

apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy."); *see also Peterson v. United States*, 673 F.2d 237, 240 (8th Cir. 1982) (concluding Government may be liable for aircraft negligently flying too low during training mission).

Nevertheless, as explained below, Lewis's negligent operation claim is barred by the SAA's two-year statute of limitations.[5]

### C.    Lewis's claims are subject to the SAA's two-year statute of limitations.

Actions under the SAA must be brought within two years after the cause of action arose. 46 U.S.C. § 30905. "[T]he statute of limitations runs from the date of the injury[.]" *McMahon v. United States*, 342 U.S. 25, 27 (1951). Because Lewis was injured on February 11, 2023, the deadline for him to file suit was February 11, 2025. But Lewis did not file this case until September 30, 2025.

Lewis argues he is entitled to equitable tolling because the Government treated his claim as an FTCA claim after the February 2023 incident. Specifically, Lewis says he reported the incident to the Coast Guard "as soon as [he] was physically able to do so" and a Coast Guard representative advised him that he could

---

[5] The two-year statute of limitations also applies to the negligent failure to warn and negligent training/supervision claims. Thus, even if the Court were to determine that it had jurisdiction over those claims because they do not fall under the discretionary function exception, the claims would nonetheless be subject to dismissal.

submit a claim for damages pursuant to the FTCA. Doc. 16. A Coast Guard official told Lewis's attorney "where to send the [Standard Form 95 ("SF95")] and supporting documents pursuant to the FTCA." Doc. 14 at 6. On January 17, 2025, Lewis presented his administrative claim to the Government using an SF95, requesting $350,000 for personal injuries and $9,734.20 for property damage. Doc. 2 at 2. On February 14, 2025, the Government confirmed receipt of Lewis's administrative claim and stated it was under review. Doc. 17. And on April 1, 2025, the Government mailed Lewis a letter informing him his claim was denied "pursuant to the [FTCA]" and that he could, within six months of the date of the letter, either file an action in federal court or request reconsideration.[6] Doc. 15.

Equitable tolling "is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citation omitted). "[T]raditional equitable tolling principles require that the claimant demonstrate *extraordinary circumstances*, such as fraud, misinformation, or deliberate concealment." *Jackson v. Astrue*, 506 F.3d 1349, 1355 (11th Cir. 2007) (emphasis in original). "But equitable tolling is inapplicable to 'late filings where the claimant failed to exercise due diligence in preserving his legal rights' or for

---

[6] Although Lewis filed this action on September 30, 2025, it appears he also contemporaneously requested reconsideration of his administrative claim, as he submitted a letter from the Government dated October 2, 2025, which confirms receipt of a request for reconsideration. Doc. 18.

Case No. 3:25-cv-1818-MCR-HTC

'what is at best a garden variety claim of excusable neglect.'" *Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993) (quoting *Irwin v. Veterans Affs.*, 498 U.S. 89, 96 (1990)).

Here, the circumstances described by Lewis do not justify equitable tolling. First, as a general matter, "[i]t is well-established that the filing of an administrative claim under the FTCA will not toll the limitations period for an action under the SAA."[7] *Ayers v. United States*, 277 F.3d 821, 828 (6th Cir. 2002).

Second, while the Government may have told Lewis that he could file an administrative claim pursuant to the FTCA, it never affirmatively told him the FTCA was his exclusive avenue for relief or that he did not have a claim under the SAA. The fact the Government references the FTCA in relation to an administrative claim is not, alone, an extraordinary circumstance warranting equitable tolling.[8] *See Farhat v. United States*, 2022 WL 2840483 (10th Cir. 2022) (equitable tolling did not apply to SAA claim when plaintiffs alleged they were misled by letters from the Government, which indicated the FTCA's statute of limitations would be tolled while administrative claim was pending but made no representation regarding the SAA's time limitation); *Hedges v. United States*, 404 F.3d 744, 752 (3d Cir. 2005)

---

[7] Although certain admiralty statutes require a plaintiff to submit an administrative claim, Lewis did not have to file an administrative claim before bringing suit under the SAA.

[8] The undersigned also notes the Government's April 1, 2025 letter—which informed Lewis that he had six months to file suit—could not have led him to miss the filing deadline under the SAA, as the statute of limitations for his claims had already expired on February 11, 2025. Thus, the April 2025 letter is not relevant to the equitable tolling analysis.

(equitable tolling did not apply to SAA claim when plaintiff was told by government officials to pursue an administrative claim under the FTCA because the officials "did not induce or trick [plaintiff] into foregoing his judicial remedies by making any affirmative misrepresentations regarding the proper avenues to pursue his claim"); *Ammer v. United States*, 881 F. Supp. 1007 (D. Md. Sept. 20, 1994) (equitable tolling did not apply despite claim that Government induced plaintiff's untimely filing by providing him with an SF-95 form that mentioned the FTCA but not the SAA).

Third, Lewis's untimely filing was avoidable with diligence. Even if Lewis and his counsel were confused by the Government's references to the FTCA, "[d]iligent research would likely have revealed not only the existence of an SAA claim but also that the limitations period under the SAA would not be tolled during the period in which he pursued an administrative complaint." *Hedges*, 404 F.3d at 753-54[9]; *Johnson*, 2025 WL 4055404, at *6 ("While the Court understands Plaintiff's frustrations as Defendant clearly moved the claim along as though it was going to process an FTCA claim, it does not find Defendant's actions rise to the level of justifying equitable tolling. … Defendant did nothing to induce Plaintiff from exploring whether his claims were more properly asserted under the SIAA or mislead

---

[9] In *Hedges*, the court determined equitable tolling did not apply even though the plaintiff was proceeding *pro se* when the Government told him to file an administrative claim. In contrast, Lewis indicates he retained counsel within a month of the incident and counsel participated in the administrative claims process. Doc. 14 at 6.

him into allowing the two-year limitations period to lapse. … [Plaintiff] could have done his own research and figured out the proper statutory basis for his claims.").

Because the two-year statute of limitations expired on all of Lewis's claims and the undersigned finds equitable tolling does not apply, the Government's motion should be granted, and this action should be dismissed.

Accordingly, it is RECOMMENDED that:

1.      The Government's motion to dismiss (Doc. 13) be GRANTED.

2.      This case be DISMISSED WITH PREJUDICE.

3.      The clerk close the file.

At Pensacola, Florida, this 7th day of July, 2026.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.